UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK

------------------------------------------------------------X

OSCAR STARKER,

                    Plaintiff,

        -against-

NATALIYA ADAMOVYCH,
LOUIS LODATO, an individual,
LOUIS LODATO, as representative of
NEW YORK CITY POLICE DEPARTMENT,
NEW YORK CITY POLICE DEPARTMENT,
THE CITY OF NEW YORK, and
DOES 1 through 20, inclusive,

                Defendants.

------------------------------------------------------------X

RECEIVED
SDNY PRO SE OFFICE
2016 MAY 13  PM 4: 35
S.D. OF N.Y.

15 CIV 691 (AJN) (JCF)

**VERIFIED AMENDED**
**COMPLAINT**

**JURY TRIAL DEMAND**

      Plaintiff Oscar Starker ("Mr. Starker"), plaintiff *pro se*, as and for his amended complaint

against Nataliya Adamovych ("Adamovych"), the City of New York (the "City"), Louis Lodato,

an individual and a representative of the New York City Police Department.

### JURISDICTION AND VENUE

     1.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1331 and 42 U.S.C. §

1983. Mr. Starker further invokes this Court's supplemental jurisdiction of the related state law

claims and causes of action pursuant to 42 U.S.C. § 1367 to the extent that they arise from the

same nucleus of operative facts as Mr. Starker's federal claims.

     2.      Venue is proper pursuant to 42 U.S.C. § 1391. Events that gave rise to Plaintiff's

claims, including the false arrest and wrongful confinement, occurred in this judicial district.

1



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/13/6

## PARTIES

3.    Mr. Starker is a resident of the city and state of New York, County of New York.

4.    The conduct complained of herein occurred in the city and state of New York.

5.    Based on information and belief, Adamovych was and still is a resident of the city and state of New York.

6.    Based on information and belief, Lodato was and still is a detective employed by defendant New York City Police Department ("NYPD") and was, at all times relevant to this action, working at the 104th precinct located at 6402 Catalpa Avenue, Ridgewood, NY 11385.

8.    Based on information and belief, each of the defendants were and still are domiciled, reside, and/or principally located in the state of New York.

9.    Defendant City of New York (the "City") is a duly incorporated municipal corporation and is the principal and the employer of the police officers, detectives, and other persons who violated or where involved in violating Mr. Starker's rights as alleged in this complaint.

11.    The NYPD is an agency and instrumentality of the City.

12.    Mr. Starker is ignorant of the true identities and capacities of the defendants designated as DOES 1-20, inclusive, but will amend this complaint when their identities and capacities have been ascertained according to proof.

13.    Based on formation and belief, each and every DOE defendant was and is, responsible for the injuries, damages and harm suffered by Mr. Starker.

14.     Each reference in this complaint to "defendant" "defendants" or a specifically named defendant refers also to all defendants sued under fictitious names.

15.     The City and the NYPD, as the employees of Lodato and some or all of the John Does, are responsible for their actions taken in the course of their employment under the doctrine of *respondeat superior*.

## NOTICE REQUIRED BY GENERAL MUNICIPAL LAW §50-e

16.     With respect to those claims asserted against the City, NYPD and Lodato, Mr. Starker, acting in accordance with the applicable provisions of section 50-e of the New York General Municipal Law, did duly and timely served a notice of his claim on the City.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

17.     Mr. Starker met Adamovych through the JDate.com web site, and they dated for a brief period of time.

18.     There is no familial relationship between Mr. Starker and Adamovych; they were never married and they did not live together.

19.     At one point, Mr. Starker lent Adamovych money, which she never repaid.

20.     Because Adamovych would not repay the loan, Mr. Starker was forced to commence a civil action against her in an attempt to recover the money she owed him.

21.     In or about February 2014, Adamovych filed a completely false and fabricated petition against Plaintiff in New York Family Court, New York County (File No. 22586, Docket No.O-30824-14), alleging, among other things, rape, sexual assault, and aggravated harassment.

22.     The sworn petition signed by Adamovych in Family Court was filled with outrageous lies and described purported incidents, which never took place.

23.     Based on Adamovych's petition, the Family Court issued a temporary order of protection ("TOP") against Mr. Starker, ex-parte, without any notice to him, and without any opportunity for him to be heard or present evidence prior to such an order being granted, which among other things prohibited contact and communications with Adamovych.

24.     Adamovych filed her fabricated petition in Family Court as part of a scheme to falsely obtain legal process, i.e., an order of protection, which could later be used to get Mr. Starker arrested on false charges, jailed, and subject him to criminal prosecution.

25.     Adamovych's actions were motivated solely by malice either because of their failed relationship or because of Mr. Starker's actions to collect the money that he had lent to Adamovych.

26.     Adamovych used the TOP that she had obtained from the Family Court based on false statements to secure his arrest and the filing of criminal charges against him based on alleged violations of the TOP, which had never taken place.

27.     Specifically, Adamovych reported to NYPD at the 17th precinct that, on February 19, 2014, March 28, 2014 and March 31, 2014, Mr. Starker had purportedly called and threatened her on the phone. Adamovych further reported that Mr. Starker had called her on March 28, 2014 and said "I'll break your legs before you go to court" and that in the course of the alleged call on March 31, 2014, Mr. Starker had made additional threats against her, asking if she was "still alive," all of which alleged threats were in violation of the TOP.

28.     In fact, Mr. Starker had not made any calls to Adamovych on February 19, March 28, and March 31, 2014, had not made any threats, and had not spoken with her at all.

4

29.      Instead of providing the police officer with Mr. Starker's actual home address, which she knew at the time of making her complaint with NYPD, Adamovych provided NYPD home address of Mr. Starker's elderly parents, both of whom were over 90 years of age, falsely telling the police that it was Mr. Starker's home address even though she knew Mr. Starker was not residing with his parents and was not regularly found at that location.

30.      The purpose of directing the NYPD officers to Mr. Starker's parents' apartment was to humiliate, alarm, and to inflict the maximum mental suffering and distress on both Mr. Starker and his elderly parents.

31.      As a result of these false and fabricated statements and reports, on or about April 1, 2014, Police Detective Christopher Kolenda ("Kolenda"), in the presence of at least four other NYPD officers, without a warrant, intruded upon, forced their way into, and entered the apartment occupied by Mr. Starker's elderly parents in Brooklyn, New York, who were frightened and scared, and who advised them that Mr. Starker was not present, and without their consent, ambulated from room to room, opening doors and cabinets, looking for Mr. Starker.

32.      When Mr. Starker learned that police officers from the 17th precinct in Manhattan were at his parents' Brooklyn apartment looking for him, he contacted the precinct and eventually spoke to Kolenda, who asked Mr. Starker to come over to the 17th precinct to "talk".

33.    Mr. Starker's understanding was that if he did not report to the 17th precinct, as directed by Kolenda, Mr. Starker's parents could expect additional visits.

34.    On May 1, 2014, Mr. Starker reported to the 17th precinct as directed by Kolenda, at which time he was confronted by accusations relating to the calls purportedly placed to Adamovych on February 19, 2014, March 28, 2014 and March 31, 2014.

35.    Mr. Starker explained that he did not make any calls to Adamovych on February 19, 2014, March 28, 2014 and March 31, 2014 and did not speak with her at all and these charges were totally bogus, outrageous, and completely false.

36.    Mr. Starker further presented Kolenda with proof that on March 28, 2014 and March 31, 2014 Mr. Starker was in Florida, provided receipts and documents, and his cell phone log that listed each called placed and received by Mr. Starker on February 19, 2014, and begged Kolenda to obtain and review both parties' cell phone records, which would show beyond any doubt that Mr. Starker was in Florida and did not make and could not make the alleged calls as described by Adamovych.

37.    When Mr. Starker tried to explain to Kolenda and those present that the incident reported by Adamovych was fabricated and completely false, that he did not make any calls to Adamovych, did not make any threats against her, and did not speak with her, presented evidence of Adamovych not being a credible informant, that she had a motive and a propensity to fabricate, and  urged the police to investigate, and that Adamovych should be the one arrested and prosecuted for making a false report, Kolenda responded that he did not care and that as long as Adamovych made an accusation that is all that was needed and that he was required to make an arrest even if the allegation was false.

38.     As a result of these events Mr. Starker was seized and arrested on May 1, 2014 and was forced to spend more than 24 hours in central booking jail in Manhattan.

39.     During that time period Mr. Starker was repeatedly pushed, shoved, shackled, handcuffed tightly, chained, forced to take off his clothes, was body searched, fingerprinted, photographed, was forced to give his DNA. These measures were humiliating, excessive, unnecessary and inflicted substantial physical and mental pain, sore and bruises, and violated Mr. Starker's privacy.

40.     In addition, Mr. Starker was placed and confined in a filthy, foul-smelling, humid and disgusting cell huddled with other prisoners during which time Mr. Starker was deprived of food, water, sleep, medications for his pain, unable to use a shower or wash himself, unable to use a restroom, and was otherwise kept in sickening, nauseating, unsanitary, and deplorable conditions, and his attempts to complain about these conditions were ignored.

41.     During the period of his confinement, Mr. Starker was also deprived of access to his personal belongings, unable to use his phone or other electronic devices, make or receive calls to contact his relatives, friends, or coworkers, unable to check upon his elderly parents to make sure they are safe, access the internet to send or receive mail or have any work done, and was completely isolated from the outside world, not knowing how long he would be held in confinement, deprived of access to his personal belongings, and basic necessities, or what will happen to him next, and was forced to endure both physical and mental pain.

42.     After many hours of having to endure these conditions, the case was filed against Mr. Starker based on these false trumped up charges concocted by Adamovych in Criminal Court in New York County, and Mr. Starker was eventually arraigned and charged with criminal contempt.

43     These charges against Mr. Starker were dismissed on motion of the District

Attorney on or about July 15, 2015.

45.     On or about January 25, 2015, Adamovych made another complaint, this time in

Queens, New York, alleging that purportedly either Mr. Starker or someone called her from a

restricted number on Mr. Starker's behalf several days previously and threatened her.

46.     These charges, as each of the previous ones reported to NYPD and in the Family

Court by Adamovych were totally false, bogus, and fabricated and were intended to falsely,

fraudulently and under false pretenses procure Mr. Starker's arrest and imprisonment and to

maliciously cause him physical, mental and economic injuries and to blackmail him financially.

47.     In fact, Mr. Starker did not call or speak to Adamovych on any of the dates she

alleged in her incident reports nor asked anyone else to do so.

48.     When Lodato called on or about February 1, 2015 to discuss the new claims

contrived by Adamovych and informed Plaintiff of the nature of her allegations, Mr. Starker

informed Lodato that he did not call and did not speak with Adamovych, nor instructed anyone

to do so.

49.     Lodato then instructed Mr. Starker to come to the precinct in Queens, stating if he

did not, the police would come to his apartment, and he would be arrested.

50.     When Mr. Starker appeared at the precinct on February 9, 2015 per Lodato's

directions, he again informed Lodato that the charges leveled against him by defendant

Adamovych were false, fabricated and bogus, that the incidents alleged by Adamovych never

happened, explained to him how Adamovych previously lied to the police, the district attorney

office, and the Family Court,  presented him with evidence demonstrating these falsehoods,

including the documents which were subpoenaed in the criminal court case, and which reflect the

detailed phone records – Plaintiff's and those of Adamovych, including the number which the latter claimed Plaintiff purportedly made calls to.

51.     Despite this and other evidence showing Adamovych lied to the police repeatedly, Lodato refused to consider or even look at it, stating: "I don't need this." He was intent on making the arrest no matter what the evidence showed, and no matter what the facts were.

52.     While Mr. Starker was attempting to discuss the situation with Lodato, and urged him to investigate the matter, consider matters that bore on whether Adamovych was a credible witness, and look at the evidence before making any conclusions as to who should be arrested and on what charges, Lodato informed Mr. Starker that he had spoken with Assistant District Attorney, who informed him no criminal charges should be filed against Plaintiff based on these latest claims made by Adamovych because of the latter's lack of credibility and inconsistencies in her story.

53.     Lodato further informed Mr. Starker that although no criminal charges will be filed against him based on this incident, he was still required to make an arrest and "process" Mr. Starker through central booking.

54.     Despite the evidence presented by Mr. Starker with respect to the falsity and the bogus nature of the outrageous charges leveled against Mr. Starker by Adamovych, and despite being notified by the district attorney's office, that they will not prosecute, on February 9, 2015 Lodato proceeded to unlawfully restrain, confine Mr. Starker and to hold him in police custody, and Mr. Starker was thereafter arrested and transported to central booking jail in Queens, handcuffed and chained, and was jailed there under same woeful and deplorable conditions as he was subjected to on May 1, 2014, for approximately seven more hours, only to be released without arraignment and without being charged with any offense.

55.    Joshua Mandell, an Assistant District Attorney, sent a letter to Mr. Starker on February 9, 2015, informing him that "your arrest under arrest number: Q15606495, arrest date: 02/09/2015, was dismissed by this Office prior to Criminal Court arraignment."

56.    Following Mr. Starker's arrests and while these fabricated criminal charges were pending against Mr. Starker in the Criminal Court and Family Court, Mr. Starker was informed that Adamovych made repeat offers, through her attorney, to drop pending criminal charges and the family court matters in exchange for large sums of money and discontinuance of Mr. Starker's civil case.

## AS AND FOR A FIRST CLAIM
### (Claim for Malicious Prosecution against Adamovych)

57    Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 56 hereof as if set out fully herein.

58.    By seeking and obtaining, without any factual or legal basis, a temporary order of Protection against Mr. Starker and swearing out criminal complaints against Mr. Starker, without any factual or legal basis for doing so. Adamovych caused criminal proceedings to be commenced against Mr. Starker.

59.    The criminal proceedings were terminated in favor of Mr. Starker.

60.    There was no probable cause for the criminal proceedings to have been brought, and the allegations that Adamovych made to the police were fabricated by Adamovych.

61.    Adamovych acted maliciously in obtaining the temporary order of protection against Mr. Starker and swearing out the criminal complaints against Mr. Starker in that there was no factual or legal basis for her to do so, and her actions were based solely in personal pique

against Mr. Starker because of their short personal relationship and/or because of Mr. Starker's

attempt to recover money that he had lent to Adamovych, which she had refused to return.

62.     As a result of the foregoing, Mr. Starker has been damaged in an amount to be

determined at trial, but not less than $2,000,000, and is entitled to recover that amount from

Adamovych, together with punitive damages.

## AS AND FOR A SECOND CLAIM
### (Claim for False Imprisonment Against Adamovych)

63.     Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 62

hereof as if set out fully herein.

64.     Adamovych, in obtaining the temporary order of protection against Mr. Starker

and swearing out criminal complaint against Mr. Starker, all without any factual or legal basis,

sought to have Mr. Starker imprisoned, and Mr. Starker was imprisoned as a result of

Adamovych's actions.

65.     Mr. Starker was conscious of the confinement caused by Adamovych's actions.

66.     Mr. Starker did not consent to the confinement.

67.     The confinements imposed on Mr. Starker was not privileged in that it was not

authorized by a valid process issued by a court having jurisdiction.

68.     As a result of the foregoing, Mr. Starker has been damaged in an amount to be

determined at trial, but not less than $2,000,000, and is entitled to recover that amount from

Adamovych, together with punitive damages.

## AS AND FOR A THIRD CLAIM
### (Violation of Constitutional Rights under 42 U.S.C. § 1983 Against Adamovych)

69.     Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 68

hereof as if set out fully herein.

70.   Adamovych's actions, set out above, violated Mr. Starker's constitutional rights, including the Fourth Amendment.

71.   Adamovych utilized procedures authorized by state statutes and policies, including obtaining the TOP through the Family Court and to achieve the violations of Mr. Starker's constitutional rights, and accordingly, has acted under color of state law and is a state actor for purposes of 42 U.S.C. § 1983.

72.   As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Adamovych, together with punitive damages.

## AS AND FOR A FOURTH CLAIM
### (Claim for Libel *Per Se* Against Adamovych)

73.   Mr. Starker repeats and restates the allegations set out in paragraph 1 through 72 hereof as if set out fully herein.

74.   Adamovych wrote the criminal complaints that she gave to the NYPD, setting out statements about actions purportedly taken by Mr. Starker.

75.   The statements set out in the criminal complaints were false and defamatory.

76.   Adamovych was aware that the statements contained in her criminal complaints were false.

77.   In that the criminal complaints accused Mr. Starker of criminal violations and violations of the TOP, the written statements were libelous *per se*.

78.   The written statements made by Adamovych were malicious and made solely to harass Mr. Starker, and, accordingly, such statements are not covered by a qualified immunity.

79.    As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Adamovych, together with punitive damages.

## AS AND FOR A FIFTH CLAIM
### (Claim for Slander *Per Se* Against Adamovych)

80.    Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 79 hereof as if set out fully herein.

81.    Adamovych made oral statements to the NYPD about Mr. Starker to induce them to arrest and bring criminal charges against Mr. Starker.

82.    The oral statements made by Adamovych about Mr. Starker were false and defamatory.

83.    Adamovych was aware that the oral statements that she made about Mr. Starker were false.

84.    In that the oral statements made by Adamovych accused Mr. Starker of criminal violations and violations of the TOP, the written statements constitute slander *per se*.

85.    The oral statements made by Adamovych were malicious and made solely to harass Mr. Starker, and, accordingly, such statements are not covered by qualified immunity.

86.    As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Adamovych, together with punitive damages.

## AS AND FOR A SIXTH CLAIM
### (Claim for Intentional Infliction of Emotional Distress Against Adamovych)

87.    Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 86 hereof as if set out fully herein.

88.     Adamovych's actions in making false statements to the police in order to effect the arrest of Mr. Starker were extreme and outrageous.

89.     Adamovych intended to cause Mr. Starker to suffer emotional distress as a result of being arrested and held in custody by the NYPD or recklessly disregarded the probability that he would suffer such distress as a result of her actions.

90.     Mr. Starker suffered emotional distress as a result of Adamovych's actions.

91.     Adamovych's actions, which caused Mr. Starker's arrest and detention, were directly linked to Mr. Starker's emotional distress.

92.     As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Adamovych, together with punitive damages.

## AS AND FOR A SEVENTH CLAIM
### (Claim for False Imprisonment Against Lodato, NYPD, the City and Does 1-20)

93.     Mr. Starker repeats and restate the allegations set out in paragraphs 1 through 92 hereof as if set out fully herein.

94.     Mr. Starker appeared at the precinct in Queens at the instruction of Lodato on or about February 9, 2015.

95.     Based on Adamovych's false allegations, Lodato began the process of arresting Mr. Starker.

96.     During the course of this process, Lodato received a telephone call from the District Attorney's office, advising him that Mr. Starker was not going to be charged with any crime because of Adamovych's lack of credibility.

97.     Despite having this information and knowing that there was no probable cause to continue to hold Mr. Starker, Lodato told Mr. Starker that he was he was still required to make

an arrest and "process" Mr. Starker through central booking before allowing Mr. Starker to leave. In doing so, Lodato intended to confine Mr. Starker.

98.    Mr. Starker was aware that he was being confined by Lodato, NYPD and the City and did not consent to the confinement.

99.    As a result of Lodato's decision to continue to hold Mr. Starker, Mr. Starker was unlawfully restrained, held in police custody, arrested and transported to the central booking jail in Queens, handcuffed and chained, and was jailed there under the woeful and deplorable conditions for approximately seven hours

100.    There was no warrant or other valid process issued by a court authorizing his arrest, and, accordingly, the confinement of Mr. Starker by Lodato, NYPD and the City was not privileged.

101.    As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Lodato, NYPD and the City, together with punitive damages.

## AS AND FOR AN EIGHTH CLAIM
### (Claim for Intentional Infliction of Emotional Distress Against Lodato, NYPD, the City and Does 1-20)

102.    Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 101 hereof as if set out fully herein.

103.    The actions of Lodato, NYPD, the City and Does 1-20 in confining Mr. Starker in order to complete an arrest and "process" him through central booking even though Lodato had been advised by the District Attorney's Office that Mr. Starker would not be charged or prosecuted for any crimes because of the lack of credibility of Adamovych were extreme and outrageous.

104.    Lodato, NYPD, the City and Does 1-20 intended to cause Mr. Starker to suffer emotional distress as a result of being arrested and held in custody by the NYPD or recklessly disregarded the probability that he would suffer such distress as a result of their actions.

105.    Mr. Starker suffered emotional distress as a result of the actions of Lodato, NYPD, the City and Does 1-20.

106.    Adamovych's actions, which caused Mr. Starker's arrest and detention, were directly linked to Mr. Starker's emotional distress.

107.    As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Lodato, NYPD, the City and Does 1-20, together with punitive damages.

**AS AND FOR A NINTH CLAIM**
**(Violation of Constitutional Rights under 42 U.S.C.**
**§ 1983 Against Lodato, NYPD, the City and Does 1-20)**

108.    Mr. Starker repeats and restates the allegations set out in paragraphs 1 through 107 hereof as if set out fully herein.

109.    The actions of Lodato, NYPD, the City and Does 1-20, set out above, violated Mr. Starker's constitutional rights, including the liberty interest set out in the Fourth Amendment.

110.    Lodato, NYPD, the City and Does 1-20 to achieve the violations of Mr. Starker's constitutional rights have acted under color of state law and is a state actor for purposes of 42 U.S.C. § 1983.

111.    As a result of the foregoing, Mr. Starker has been damaged in an amount to be determined at trial, but not less than $2,000,000, and is entitled to recover that amount from Adamovych, together with punitive damages.

WHEREFORE, Mr. Starker demands judgment against Adamovych on his First, Second,

Third, Fourth, Fifth and Sixth Claims for damages in an amount to be determined at trial, but not

less than $2,000,000, and against Lodato, NYPD, the City and Does 1-20 on his Seventh, Eighth

and Ninth Claims for damages in an amount to be determined at trial, but not less than

$2,000,000, together with punitive damages, interest, the costs and disbursements of this action

and such other and further relief as is just and proper.


Dated: New York, New York
         May 13, 2016




_____
OSCAR STARKER
Plaintiff Pro-Se
110 Fulton Street, apt. 9A
New York, NY 10038
212-786-2334

## VERIFICATION

STATE OF NEW YORK          )

                            ) ss.:

COUNTY OF *Kings*          )

      OSCAR STARKER, being duly sworn, deposes and says: That I am the plaintiff in the within action; that I have read the foregoing Verified Amended Complaint and know the contents thereof; the same is true to the best of my knowledge, except as to those matters therein stated to be alleged upon information and belief and as to those matters, I believe them to be true.

 

                                               _____

                                               OSCAR STARKER

Sworn to before me this
_13_ day of _May_, 2016

_____
Notary Public

ALEXANDRE SHERMADINI
Notary Public - State of New York
NO. 01SH6248415
Qualified in Kings County
My Commission Expires _03/19/19_

United States District Court
Southern District of New York
~~Supreme Court of the State of New York~~
~~Appellate Division: Second Judicial Department~~

OSCAR STARKER Plaintiff
- Against -

Nataliya Adamovych
et al

AFFIDAVIT OF SERVICE

Appellate Division Docket No.:

15 CIV 3691 (AJN)(JCF)

State of New York
County of ___NEW YORK___ ) ss.:

___STANISLAV LEVIN___, being duly sworn,
deposes and says that:

1. The deponent is not a party to the action, is 18 years of age or older, and resides at:

BROOKLYN, NEW YORK

2. On the __13th__ day of __MAY__, 20_16_, the deponent served the
following described paper upon the person or persons listed in paragraph 5 hereof:
Verified Amended Complaint Plaintiff's Memorandum of Law
in Opposition to the motions of APATIYA Adamovych,
Louis Lodato, the New York City Police Department the City of
New York and
3. The number of copies served on each of said persons was _____/_____.   Does 1-20 to
dismiss the
4. The method of service on each of said persons was:   complaint

☑ By delivering the paper to the person personally pursuant to CPLR 2103(b)(1).

☐ By mailing the paper to the person at the address designated by him or her for that
purpose by depositing the same in a first class, postpaid, properly addressed wrapper, in a
post office or official depository under the exclusive care and custody of the United
States Postal Service within the State of New York pursuant to CPLR2103(b)(2).

☐ Where the person served is an attorney, by leaving the paper with the person in charge of
the office of that attorney, pursuant to CPLR 2103(b)(3).

☐ Where the person served is an attorney whose office was not open for business at the time
of service, by depositing the paper, enclosed in a sealed wrapper directed to the attorney,
in the attorney's office letter drop or box pursuant to CPLR 2103(b)(3).

☐ By leaving the paper at the person's residence within the State of New York with a
person of suitable age and discretion, pursuant to CPLR 2103(b)(4) where service at the
person's office could not be made pursuant to CPLR 2103(b)(3).

☐ By transmitting the paper by facsimile transmission to the telephone number or other
station designated by the person for that purpose, pursuant to CPLR 2103(b)(5). A signal
was obtained from equipment of the person served indicating that the transmission was
received and a copy of the paper was mailed to the person

☐   By dispatching the paper to the person by overnight delivery service at the address
designated by the person for that purpose, pursuant to CPLR 2103(b)(6).

5.   The name of the person or names of the persons served and the address or addresses at which
service was made are as follows:

1) Corporation Counsel of the City of New York
   Cherie N, Brown
   100 Church Street
   New York, NY 10007

2) Paul, Weiss, Rifkind, Wharton & Garrison LLP
   Jane Bobet, Michele Hirshman
   1285 Avenue of the Americas
   New York, NY 10019

Dated: _____New York_____, New York
       ____May 13____, 20 16

Stanislav Lee

Stanislav Levin.

Sworn to before me this ___13___
day of ____may____, 20 16

_____
Notary Public

ANA D CORSINO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CO6256757
Qualified In New York County
My Commission Expires 03/05/2020