UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Oscar Starker,

        Plaintiff,

—v—

Nataliya Adamovych, *et al.*,

        Defendants.



15 Civ. 3691 (AJN)

OPINION AND ORDER

ALISON J. NATHAN, District Judge:

This case arises from Plaintiff's arrest by the NYPD following a complaint by Defendant Nataliya Adamovych that he violated a temporary order of protection against him. Plaintiff, proceeding *pro se*, asserts state and federal law claims against Adamovych and the City Defendants, which include the City of New York, the NYPD, and Detective Lodato, the arresting officer. He seeks compensatory damages from Adamovych for malicious prosecution, false arrest, violations of 42 U.S.C. § 1983, libel per se, slander per se, and intentional infliction of emotional distress. He also seeks compensatory damages from the City Defendants for violations of 18 U.S.C. § 1983, and for intentional infliction of emotional distress. Before the Court is Defendants' motions to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons provided below, these motions are GRANTED.

I.     BACKGROUND

    A. Factual Background

The Court takes the following facts from Plaintiff's Amended Complaint. Plaintiff and Adamovych met through the dating website JDate.com and briefly dated. Am. Compl. (Dkt. No.

1

34) ¶ 17. Around February 2014, Adamovych filed a petition against Plaintiff in family court, and the family court issued a temporary order of protection against Plaintiff ex-parte, which prohibited him from contacting or communicating with Adamovych. *Id.* ¶¶ 21–23. Plaintiff alleges that the allegations in the Family court petition were fabricated, and that Adamovych was motivated to seek an order of protection only to use it to get Plaintiff arrested on false charges. *Id.* ¶ 24.

Adamovych subsequently reported to the NYPD that Plaintiff had made threats against her in violation of the temporary order of protection on three separate occasions in February and March 2014. *Id.* ¶ 27. Plaintiff, however, alleges that he did not make these calls. *Id.* ¶ 28. Around April 1, 2014, Detective Christopher Kolenda arrived at Plaintiff's parents' house to arrest him for the violations of the temporary order of protection alleged in Adamovych's February and March complaints. *Id.* ¶¶ 29–31. Plaintiff was not then at his parents' house, but upon hearing that NYPD officers were looking for him, he contacted the precinct and spoke to Detective Kolenda, who asked him to come over to the precinct to "talk." *Id.* ¶ 32. On May 1, 2014, Plaintiff reported to the precinct, informed Detective Kolenda that he had not placed the alleged calls, and presented him with evidence supporting Plaintiff's story. *Id.* ¶¶ 34–36. Detective Kolenda allegedly informed Plaintiff that he was "required to make an arrest even if the allegation was false," and he proceeded to arrest Plaintiff. *Id.* ¶¶ 37–38. After at least 24 hours in jail, a criminal case was filed against Plaintiff, and he was arraigned on charges of criminal contempt. *Id.* ¶¶ 38–42. These charges were subsequently dismissed on July 15, 2015. *Id.* ¶ 43.

Around January 25, 2019, Adamovych made another complaint to a different NYPD precinct, alleging that Plaintiff or someone acting at his direction called her in violation of the

temporary order of protection and threatened her. *Id.* ¶ 45. Plaintiff again alleges that neither he nor anyone acting at his direction made such a call. *Id.* ¶ 46–47. Around February 1, 2015, Detective Lodato, a different detective than had investigated Adamovych's previous complaints, called Plaintiff to discuss the January 25 complaint. *Id.* ¶ 48. Detective Lodato allegedly instructed Plaintiff to appear at the precinct, which he did on February 9, 2015. *Id.* ¶ 49–50. Plaintiff informed Detective Lodato that the complaint was fabricated and allegedly presented him with evidence of the fact that Adamovych had lied to the police, the district attorney's office, and family court throughout the previous family and criminal court proceedings, which Lodato said he "[did not] need." *Id.* ¶ 50–51.

Plaintiff urged Detective Lodato to further investigate the January 25 complaint and consider Adamovych's credibility in light of prior complaints and proceedings. *Id.* ¶ 52. Detective Lodato allegedly informed Plaintiff that he had received a call from an assistant district attorney, who informed him that no criminal charges would be brought due to Adamovych's "lack of credibility and inconsistencies in her story." *Id.*. However, Detective Lodato clarified that "he was still required to make an arrest and 'process' [Plaintiff] through central booking." *Id.* ¶ 53. Plaintiff was subsequently arrested and held in jail for approximately seven hours before he was released. *Id.* ¶ 54. Upon his release, Plaintiff received a letter from an assistant district attorney stating that his February 9 arrest was "dismissed by this Office prior to Criminal Court arraignment." *Id.* ¶ 55.

### B. Procedural Background

Plaintiff filed his Complaint on April 30, 2015, asserting claims against Adamovych, the City, the NYPD, and Detectives Kolenda and Lodato. Dkt. No. 2. On February 1, 2016, Defendants filed motions to dismiss the Complaint. Dkt. Nos. 21, 23. The Court subsequently

issued an order directing Plaintiff to either file an amended complaint or oppose Defendants' motions to dismiss. Dkt. No. 25. On May 13, 2016, following several extensions, Plaintiff filed an Amended Complaint, dropping claims against Detective Kolenda entirely and asserting claims against the remaining City Defendants only with respect to the February 9, 2015 arrest. Dkt. No. 34. Motions to dismiss the Amended Complaint were subsequently filed on June 10, 2016. Dkt. Nos. 39, 41. The Court stayed the case in light of related state court proceedings on February 3, 2017, and denied the motions to dismiss with leave to renew following the resolution of motions in the state court litigation. Dkt. No. 51.

Following resolution of the state court motions, the Defendants moved to renew their motions to dismiss. Dkt. Nos. 83, 84. The stay was lifted on November 14, 2018 and the Court, noting that Plaintiff had sought leave to amend his Amended Complaint prior to the stay, directed Plaintiff to file a motion to amend his complaint if he still intended to do so. Dkt. No. 85. Plaintiff subsequently sought and received an extension to file his second amended complaint, but no such complaint was filed. Dkt. Nos. 88, 90. Accordingly, the Defendants renewed their motions to dismiss the Amended Complaint on February 28, 2019, which are now before the Court. Dkt. Nos. 96, 100.

## II. LEGAL STANDARD

In deciding the motions to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the Amended Complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Additionally, the Court construes all of Plaintiff's arguments liberally, as "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the

4

strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal citations and alterations omitted). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court may also consider "documents plaintiff[] had . . . in [his] possession or had knowledge of and upon which [he] relied in bringing suit," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), and take judicial notice of "public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'" *Awelewa v. New York City*, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (quoting *Wims v. New York City Police Dep't*, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011)). Under this standard, the Court may properly consider the temporary order of protection and the NYPD Domestic Incident Report from Adamovych's January 25, 2015

5

complaint. *See* Decl. of Evan F. Jaffe, Ex. B, C.

## III. DISCUSSION

### A. Federal Claims against City Defendants

As an initial matter, contrary to Plaintiff's contention, the Court may consider a qualified immunity defense on a motion to dismiss. While "motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road," the Supreme Court itself "has made clear that qualified immunity *can* be established by the facts alleged in a complaint." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). Indeed, because the doctrine of qualified immunity "protects officials not merely from liability but from *litigation*," the Second Circuit has instructed courts that an affirmative defense of qualified immunity "should be resolved when possible on a motion to dismiss, 'before the commencement of discovery.'" *Id.* (emphasis added).

#### 1. False Arrest[1]

Plaintiff claims that his arrest by Detective Lodato on February 9, 2015 constituted false arrest. *See* Am. Compl. ¶¶ 93–101. A plaintiff raising a claim under § 1983 for false arrest "must show . . . that the defendant intentionally confined him without his consent and without justification." *Weyant*, 101 F.3d at 852. Probable cause for arrest "constitutes justification and 'is a complete defense to an action for false arrest' . . . under § 1983." *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "[P]robable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested

---

[1] While Plaintiff styles his claims as claims for false imprisonment, "the causes of action for false arrest and false imprisonment are synonymous" under New York law, and the Court uses "false arrest" throughout this Opinion and Order. *Washington v. Town of Greece*, 126 A.D.3d 1552, 1553 (4th Dep't 2015).

has committed or is committing a crime.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). However, the Court does not here consider whether probable cause *actually existed* for Plaintiff's February 9, 2015 arrest because it concludes that, even in the absence of probable cause, the arresting officer is entitled to qualified immunity as a matter of law.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir.2007) (internal quotation marks omitted). Typically, courts look to Second Circuit and Supreme Court precedent to determine whether the conduct in question violated a clearly established right, *Garcia*, 779 F.3d at 92; however, "the absence of a decision by [the Second Circuit] or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established" where Second Circuit case law "clearly foreshadow[s] a particular ruling on the issue." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) (internal quotation marks omitted). The key inquiry "in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The allegations in the Amended Complaint establish Detective Lodato's entitlement to qualified immunity as a matter of law. "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia*, 779 F.3d at 92. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

7

competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)). In this case, Detective Lodato had at least arguable probable cause to arrest Plaintiff on February 9, 2015 for criminal contempt because reasonable officers could disagree as to whether the probable cause test was met. Accepting as true all of the allegations in the Amended Complaint, Lodato possessed the following information at the time of Plaintiff's arrest: 1) Adamovych had made a complaint on January 25, 2015 that she was contacted by Plaintiff or someone acting at his direction in violation of the temporary order of protection she had against him, Am. Compl. ¶ 45; 2) Adamovych's temporary order of protection against Plaintiff was valid and in effect, Decl. of Evan F. Jaffe, Ex. C; 3) Plaintiff claimed his innocence, Am. Compl. ¶ 48, 50; and 4) Plaintiff and the assistant district attorney raised concerns about Adamovych's reliability based on past complaints levied against Plaintiff, Am. Compl. ¶¶ 50–52. Given this information, and in light of the fact that "[i]n cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a *significant* factor in establishing probable cause," *Carthew v. Cty. of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (emphasis added), the Court finds, as a matter of law, that "officers of reasonable competence could disagree" as to whether there was then reasonably trustworthy information of facts and circumstances sufficient to warrant a belief that Plaintiff had committed a crime. In other words, Detective Lodato's "judgment was [not] so flawed that no reasonable officer would have made a similar choice." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (*Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir.1995)). Accordingly,

arguable probable cause existed for Plaintiff's February 9, 2019 arrest as a matter of law, and Detective Lodato is entitled to qualified immunity for any claims arising therefrom.

Plaintiff nonetheless argues that the evidence of his innocence that he presented to Lodato, Am. Compl. ¶ 50, as well as the assistant district attorney's alleged notification that he would not prosecute Plaintiff, Am. Compl. ¶ 52, effectively vitiated any probable cause or arguable probable cause to arrest him for criminal contempt, Am. Compl. ¶ 54. However, an "officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006). Indeed, it is well established in the Second Circuit that "a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Garcia*, 779 F.3d at 93 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)); *see also Panetta*, 460 F.3d at 398 ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.").

Rather, it is clearly established that an officer "certainly is entitled to qualified immunity" where, as here, a suspect's defenses "rest[] on facts that are so unclear, or a legal theory that is not so clearly established, that it cannot be said that any reasonable officer would understand that an arrest under the circumstances would be unlawful." *Garcia*, 779 F.3d at 96. The facts underlying Plaintiff's innocence defense alleged in the Amended Complaint—that he told Detective Lodato that he didn't place the threatening call and presented "evidence" of Adamovych's prior false claims, Am. Compl. ¶¶ 50–51—are not so clear that any reasonable officer would have understood his arrest to be unlawful under the circumstances. Furthermore, it is not clearly established in this Circuit that a prosecutor's pre-arrest determination not to charge

9

vitiates probable cause for the subsequent arrest. Indeed, at least one court in this Circuit has found just the opposite. *See, e.g., Kishor Kumar Rao v. City of New York*, 2018 U.S. Dist. LEXIS 54920, at *14 (E.D.N.Y. March 29, 2018) ("[A] prosecutor's determination not to file an indictment, even if made prior to an arrest, does not eliminate probable cause."). That the assistant district attorney allegedly stated that this determination was based on Adamovych's "lack of credibility and inconsistencies in her story," with respect to *prior* complaints, Am. Compl. ¶ 52, likewise does not vitiate actual or arguable probable cause but rather amounts only to one of several factors to be considered by Detective Lodato in determining whether probable cause existed for the subsequent February 9 arrest under the totality of the circumstances. Accordingly, Detective Lodato is entitled to qualified immunity in spite of Plaintiff's defenses, because the facts and legal theories underlying those defenses were not *so clear* that no reasonable officer could find arrest lawful under the circumstances. *Garcia*, 779 F.3d at 96.

### 2. Malicious Prosecution[2]

"To establish a [§ 1983] claim for malicious prosecution . . . the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 413, 417 (2d Cir. 1999). "As with false arrest, the existence of probable cause is a complete defense to malicious prosecution." *Bryant v. Crowe*, 697 F. Supp. 2d 482, 491 (S.D.N.Y. 2010).

The Court need not consider whether probable cause constitutes a complete defense to Plaintiff's malicious prosecution claim because he has failed to adequately allege each element

---

[2] To the extent that it is distinct from Plaintiff's false arrest claim discussed above, the Court construes Plaintiff's Ninth Claim as a § 1983 malicious prosecution claim.

10

of the tort. Indeed, he cannot even allege the first element because no prosecution was ever initiated against him following the February 9, 2015 arrest. *See Silver v. Kuehbeck*, 2005 U.S. Dist. LEXIS 26956, at *15 (S.D.N.Y. Nov. 7, 2005) ("[A] malicious prosecution may arise only after an arraignment or indictment or some other 'evaluation by a neutral body that the charges [were] warranted." (internal quotation marks omitted)); *see also* Am. Compl. ¶ 55 (citing letter from assistant district attorney that Plaintiff's arrest "was dismissed prior to Criminal Court arraignment"). Accordingly, Plaintiff has failed to state a § 1983 claim for malicious prosecution as a matter of law.

### 3. *Monell* Liability

Plaintiff's failure to adequately plead any violation of his constitutional rights also precludes him from stating a claim for municipal liability against the City, because "municipal liability under *Monell* cannot stand without an underlying constitutional violation." *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 109 (S.D.N.Y. 2016); *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable. *Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."). Accordingly, Plaintiff's claims against the

City fail because he failed to state a claim with respect to any underlying violation of his constitutional rights.

Plaintiff's claims also fail against the NYPD for the further reason that "the NYPD is a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

### B. Federal Claim against Adamovych

Plaintiff alleges that Defendant Adamovych also violated his constitutional rights and that she too is liable under § 1983. Plaintiff's failure to adequately plead any violation of his constitutional rights, as discussed above, also precludes him from stating a claim against Adamovych for violations of those same rights. Moreover, his § 1983 claim against her fails for the additional and more salient reason that Adamovych is not a state actor. "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). "[M]erely supplying information to a police officer does not make the supplier of information a state actor." *Luciano v. City of New York*, 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009). While a private actor may be liable under § 1983 where she conspired with state actors to violate constitutional rights, *Ciambriello*, 292 F.3d at 324–25, Plaintiff does not allege that Adamovych and the City Defendants were acting in concert such that she could be held liable on a conspiracy theory under § 1983.

### C. Leave to Amend

For the reasons articulated above, the Court finds that Plaintiff has failed to state a federal claim against any Defendant. While Plaintiff has already amended his complaint once, he seeks

leave from the Court to amend his Amended Complaint. Dkt. No. 108 at 22–23. The Court grants Plaintiff's request and dismisses his federal claims without prejudice.

**D. State Law Claims**

Because Plaintiff has failed to state a claim for relief under federal law, only his state-law claims remain. Whether to exercise supplemental jurisdiction over these claims is a decision resting "within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir.2013) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ.*, 484 U.S. at 350 n. 7. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the City Defendants and Adamovych because it concludes that these factors do indeed weigh against the exercise of supplemental jurisdiction in this case. Accordingly, Plaintiff's state-law claims are dismissed without prejudice so that he may pursue them in state court if he wishes.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted. Plaintiff's Amended Complaint is dismissed without prejudice. This resolves Dkt. Nos. 96 and 100. If he wishes to file a second amended complaint, he must do so within 30 days of the date of this Opinion and Order. Failure to do so will result in dismissal of his claims with prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court will mail a copy of this Opinion and Order to Plaintiff, and that mailing will be noted on the public docket.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge