UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/1/20

Oscar Starker,

                Plaintiff,

–v–

Nataliya Adamovych, *et al.*,

                Defendants.

15-cv-3691 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

       Plaintiff Oscar Starker brought this action against Defendants Nataliya Adamovych, the City of New York, the New York Police Department, and Detective Lodato, seeking compensatory damages from Adamovych for malicious prosecution, false arrest, violations of 42 U.S.C. § 1983, libel per se, slander per se, and intentional infliction of emotional distress, and seeking compensatory damages from City Defendants for violations of 18 U.S.C. § 1983 and for intentional infliction of emotional distress. On September 30, 2019, the Court issued a Memorandum Opinion & Order granting Defendants' motions to dismiss the Complaint without prejudice. Dkt. No. 118 ("Op."). The Order stated that if the Defendant wished to file a second amended complaint, he must do so within 30 days of the September 30, 2019 Order or his Complaint would be dismissed with prejudice. *Id*. at 13. Now before the Court are Plaintiff's motions to vacate the Court's judgment, for reconsideration of the Court's September 30, 2019 Order, and to file a second amended complaint. Dkt. Nos. 122, 123. For the reasons set forth below, Plaintiff's motions are DENIED.

1

## I. Background

The Court assumes familiarity with this matter, the factual background of which was described at length in the Court's September 30, 2019 Order. *See* Dkt. No. 118.

## II. Legal Standard[1]

"A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). Accordingly, unless the moving party points to "matters . . . that might reasonably be expected to alter the conclusion reached by the court," reconsideration should generally be denied. *Shrader v. CSX Tranp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). This standard is exigent because "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted). In addition, "[t]o be successful on a motion for reconsideration, the movant must present matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Lopez v. Colvin*, No. 13-CV-03465 (ALC), 2014 WL 5040285, at *1 (S.D.N.Y. Sept.

---

[1] Plaintiff cites Federal Rules of Civil Procedure 59(e) and 60(b), along with Local Rule 6.3, in his notices of the motions for reconsideration and to vacate the judgment. *See* Dkt. No. 122 at 4; No. 123 at 1. In the Southern District of New York, Local Rule 6.3 provides the standard for a motion for reconsideration. Furthermore, the standards for a motion pursuant to rule 59(e) and Local Civil Rule 6.3 are identical. *See Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 256 (S.D.N.Y. 2017). Similarly, "[t]he standards governing motions under Local Rule 6.3 . . . and [Federal Rule of Civil Procedure] 60(b) are the same." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016). Thus, the Court construes Plaintiff's motions for reconsideration and/or to vacate the judgment as a motion pursuant to Local Rule 6.3. The Court notes that Plaintiff's motions are untimely under Local Rule 6.3, which provides that "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment." *See* S. & E.D. N.Y.R. 6.3. The motions' untimeliness provides an additional basis for denial.

28, 2014) (internal quotation marks omitted). A district court "has broad discretion in determining whether to grant a motion" for reconsideration. *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000); *see also Farez-Espinoza v. Napolitano*, No. 08-CV-11060 (HB), 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009) ("The decision whether to grant a motion for reconsideration under Local Rule 6.3 and Federal Rule 59(e) or a motion under Rule 60(b) lies in the sound discretion of the district court.").

Plaintiff also moves for leave to file a Second Amended Complaint. "It is well established that '[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).'" *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (citation omitted). In addition, when evaluating excusable neglect under Rule 6(b)(1)(B), the following factors should be considered: "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (citing *Pioneer Inv. Servs., Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The Second Circuit focuses on the third factor, noting that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule . . . ." *Id.* (internal citations omitted).

### III.  Discussion

The Plaintiff's motions to vacate the judgment and for reconsideration of the Court's prior opinion are based on his theory that the Court overlooked key facts and controlling case law in ruling against him in its prior opinion. With respect to Defendant Adamovych, Plaintiff argues that the Court overlooked controlling case law and facts in the record by finding that

3

Adamovych was not a state actor for the purpose of liability under 42 U.S.C. § 1983. *See* Dkt. No. 123 at 6–9. With respect to the City Defendants, meanwhile, the Plaintiff argues that the Court overlooked facts favorable to him and erred by failing to grant him the opportunity to conduct discovery before granting qualified immunity to Detective Lodato. *See id.* at 12–25. The Plaintiff further argues that the Court overlooked controlling case law that he believes makes clear that Detective Lodato had neither actual nor arguable probable cause in arresting the Plaintiff after being notified by a prosecutor that the prosecutor's office would not move forward with charges against Plaintiff. *See id.* at 9–12. In addition, the Plaintiff argues that the Court erred in dismissing a municipal liability claim against the City on the grounds that the Plaintiff failed to adequately plead a violation of his constitutional rights; he argues that a finding by the Court that Detective Lodato was entitled to qualified immunity does not equate to a finding that Detective Lodato violated Plaintiff's constitutional right. *See id.* at 3–5. And finally, the Plaintiff argues that the Court erred by failing to address municipal liability arising from an arrest of Plaintiff on May 25, 2014 by Detective Kolenda. *See id.* at 5–6.

Having considered Plaintiff's claims and found them to be without merit, the Court concludes that Plaintiff does not advance convincing grounds for reconsideration. Accordingly, his motion is denied.

### A. The Court Did Not Err in Dismissing Plaintiff's 42 U.S.C. § 1983 Claim Against Defendant Adamovych.

Plaintiff first argues that the Court, in dismissing his claim against Defendant Adamovych for violations of 42 U.S.C. § 1983 by finding that Adamovych was not a state actor, overlooked authority cited by Plaintiff—*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) — asserting the "joint action" test for state actors. *See* Dkt. No. 123 at 6–9. Plaintiff also argues that the Court required that conspiracy between Adamovych and state officials be alleged, thus

overlooking other tests for state action. *See id.* at 8. His arguments are unconvincing. The Court reviewed the joint participation test for state action under § 1983, *see* Op. at 12 (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323-25 (2d Cir. 2002) (discussing and applying the joint participation/conspiracy test for state action)), after which it determined that liability on this theory failed because Plaintiff had not alleged that Adamovych was acting in concert with City Defendants. *Id.* In doing so, the Court did not hold that the conspiracy theory was the only way to demonstrate state action; the Court merely referred to conspiracy as one theory of liability. And contrary to the Plaintiff's claims, that the Court did not specifically cite *Lugar* does not in itself mean that the Court overlooked the controlling case law.

Plaintiff further argues that the Court's finding that Adamovych "merely suppl[ied] information to a police officer" overlooks evidence that Adamovych did more than just that. *See* Dkt. No. 123 at 7–8. Specifically, Plaintiff asserts that Adamovych fraudulently procured a temporary order of protection and made more than one false allegation to police, and he argues that flawed City policies enabled Adamovych. *See* Dkt. No. 123 at 7-8. However, even in the Plaintiff's telling of the facts, Adamovych's actions in connection with City Defendants simply consist of supplying information to a police officer; the Plaintiff's allegations that the information Adamovych provided to police was false or related to a fraudulently obtained temporary order of protection do not change this fact. Accordingly, the Court did not overlook any evidence that would support a contrary conclusion; rather, it reached its conclusion after analyzing all of the facts and evidence presented to it. The Plaintiff's allegations as to this claim, therefore, fail to meet the Second Circuit's exacting standard for evaluating motions for reconsideration.

> **B.  The Court Committed No Clear Error in Dismissing Plaintiff's Claim Against Detective Lodato for False Arrest or in Dismissing Plaintiff's Municipal Liability Claim Against the City.**
>
> **1.  Dismissal of the False Arrest Claim Against Detective Lodato was Proper.**

Plaintiff next argues that the Court erred in dismissing Plaintiff's § 1983 false arrest claim against Detective Lodato. In its prior opinion, the Court found that the facts in the record cited by Plaintiff, viewed in the light most favorable to Plaintiff, established at least arguable probable cause by Detective Lodato to arrest Plaintiff, thus entitling Detective Lodato to qualified immunity. *See* Op. at 8. Indeed, the Court overlooked none of the issues that the Plaintiff now raises; the Plaintiff's attempts to relitigate the particular relevance of these facts are unavailing and provide insufficient grounds for reconsideration.

Plaintiff contends that after Detective Lodato was informed by a prosecutor that Plaintiff would not be charged due to a "lack of credibility and inconsistencies in [Adamovych's] story," Detective Lodato no longer had even arguable probable cause to arrest Plaintiff. *See* Dkt. No. 123 at 9–12. In addition, the Plaintiff argues that the Court's opinion overlooked other facts that indicated that the complaint by Adamovych was not trustworthy. *See id.* at 12–18. Plaintiff points to alleged contradictions in Adamovych's story on different occasions regarding who the caller was and what the caller said. *See id.* at 14–16. And the Plaintiff further claims that he provided Lodato with exculpatory evidence, including phone records, that indicated Adamovych's lack of credibility in prior complaints made to police. *See id.* at 16–18. But contrary to the Plaintiff's assertions, these observations, even if true, do not indicate any error in the Court's reasoning and conclusions. On the contrary, for the reasons stated in the Court's September 30, 2019 Order and Opinion, and for the reasons discussed below, the facts in the record cited by Plaintiff, even when viewed in the light most favorable to him, established at

6

least arguable probable cause by Detective Lodato to arrest Plaintiff, thus entitling Detective Lodato to qualified immunity. *See* Dkt. No. 118 at 8.

First, a prosecutor's pre-arrest determination not to press charges does not eliminate probable cause to arrest; it merely indicates that the prosecutor did not believe there was proof of guilt beyond a reasonable doubt. *See Rao v. City of New York*, No. 14-CV-7422 (RRM) (LB), 2018 WL 1582289, at *5 (E.D.N.Y. Mar. 29, 2018) ("The existence of probable cause turns on whether there is sufficient evidence that a crime has been committed . . . . An ADA's decision not to prosecute, by contrast, does not eliminate the presence of a crime, but rather indicates that she may need additional evidence to convince a jury beyond a reasonable doubt."); *see also Quinn v. City of New York*, No. 99-CV-7068 (JBW), 2003 WL 1090205 at *4 (E.D.N.Y. Mar. 12, 2003) ("The District Attorney's failure to prosecute furnishes no support to [plaintiff's claim of false arrest]. The validity of an arrest does not depend on a finding of innocence or any other disposition."). As the Court has already noted, the prosecutor's assertion that Adamovych was not credible in *prior* complaints was merely one factor to be considered in Detective Lodato's probable cause assessment, not a dispositive determination. *See* Op. at 10. Plaintiff's reliance on *Simon v. City of New York*, meanwhile, which assessed a Fourth Amendment violation where police detained the plaintiff in contravention to the terms of an arrest warrant, presents a wholly separate legal issue that does not change the Court's evaluation of its analysis. *See* Dkt No. 123 at 10–12; *Simon v. City of New York*, 893 F.3d 83, 92-96 (2d Cir. 2018).

Furthermore, Plaintiff contends that some inconsistencies in Adamovych's statements to police negated probable cause. *See* Dkt. No. 123 at 14–16. But he overstates the significance of the inconsistencies in Adamovych's statements to police, which were not so great as to substantiate a conclusion that no reasonable officer in Detective Lodato's position would find

7

probable cause to arrest. Instead, Detective Lodato's awareness that Adamovych had a temporary order of protection against Plaintiff and his subsequent knowledge that Adamovych made a complaint that Plaintiff violated the order were significant in establishing probable cause. *See Carthew v. Cty. of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010). Plaintiff, citing *Florida v. J.L.*, 529 U.S. 266 (2000), erroneously argues that a tip from an anonymous caller offering no indicia of reliability in this case is not sufficient to establish probable cause. *See* Dkt. No. 123 at 23–24. First, police received a complaint from Adamovych, *not* from an anonymous tipster. Second, Adamovych asserted that she received a call from Plaintiff or someone acting on behalf of Plaintiff, which, if true, would itself lead to a reasonable conclusion that the Plaintiff had violated the temporary order of protection. Regardless of the Plaintiff's assessment that the complaint was false, Detective Lodato acted reasonably in giving weight to Adamovych's complaint in determining probable cause. *See, e.g., Carthew*, 709 F. Supp. 2d at 192 (officer could reasonably conclude there was probable cause to arrest plaintiff when his wife alleged plaintiff violated an order of protection and plaintiff entered a building where he knew his wife would be, despite plaintiff's explanations to the officer that he did not violate the order).

The Court has also reviewed and addressed Plaintiff's contentions that Detective Lodato ignored potentially exculpatory evidence provided to the detective by Plaintiff. *See* Dkt. No. 118 at 9. As the Court previously explained, Detective Lodato, who already had probable cause to make the arrest, was not required to investigate "every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (internal quotation marks omitted). Indeed, as the Second Circuit has made clear, an "officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006).

Finally, the Court rejects the Plaintiff's argument that the Court was obligated to allow the parties to proceed to discovery. *See* Dkt No. 123 at 18–25. As the Second Circuit held in *Garcia*—on which the Plaintiff primarily relies—"because qualified immunity protects officials not merely from liability but from litigation, [] the issue should be resolved when possible on a motion to dismiss, 'before the commencement of discovery,' to avoid subjecting public officials to time consuming and expensive discovery procedures.). *Garcia*, 779 F.3d at 97 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). The Court's analysis in its original opinion was consistent with this general approach. The Plaintiff's assertion that the Second Circuit in *Garcia* "emphasized that attempts to dismiss based on the affirmative defense at the pleading stage would 'generally face a difficult road,'" *see* Dkt. No. 123 at 21, mischaracterizes *Garcia*'s holding; *Garcia* states that the affirmative defense of qualified immunity *can* be established by facts alleged in the complaint and *should* be resolved, if possible, at the motion to dismiss stage prior to discovery to protect officials from litigation. *Garcia*, 779 F.3d at 97 (citing *Wood v. Moss*, 572 U.S. 744 (2014); *Forsythe*, 472 U.S. at 526). Here, Detective Lodato knew that Adamovych had a valid temporary order of protection against Plaintiff and Adamovych complained to police that Plaintiff or someone acting on his behalf had contacted her in violation of the order. Accordingly, given the other facts in this case, Detective Lodato had at least arguable probable cause to arrest Plaintiff. And, as discussed above, that conclusion was in no way undermined by the Plaintiff's assertions of his innocence and information from arguably raised questions about Adamovych's reliability in past complaints. In sum, the Court again finds that it properly dismissed the claim against Detective Lodato on grounds of qualified immunity at the pleading stage.

Finally, Plaintiff argues that the Court overlooked his claim against Detective Lodato for excessive detention. *See* Dkt. No. 135 at 7–10. As a preliminary matter, the Plaintiff did not assert a claim of excessive detention in his amended complaint. *See* Dkt. No. 34. Even if he had, however, he alleged no facts to support such a claim. As discussed, Detective Lodato had at least arguable probable cause to arrest Plaintiff and wait for a formal decision by the assistant district attorney not to prosecute. Plaintiff alleged that he was held in custody for seven hours and released without arraignment, and that he later received a letter from the assistant district attorney stating that his arrest had been dismissed. *See* Dkt. No. 34 ¶¶ 54-55. But detention prior to arraignment not in excess of 48 hours is "presumptively reasonable" under the Fourth Amendment; in such cases, the plaintiff bears the burden of showing that delay was unreasonable. *See Case v. City of New York*, 233 F. Supp. 3d. 372, 386-87 (S.D.N.Y. 2017). Thus, the Plaintiff's seven-hour detention was presumptively reasonable, and Plaintiff did not assert sufficient facts to support a claim that his detention was unreasonably delayed.

### 2. There is No Basis to Reconsider the Court's Dismissal of Plaintiff's Municipal Liability Claim Against the City of New York.

Plaintiff also argues that the Court erred in dismissing Plaintiff's *Monell* liability claim for failing to state a claim based on any underlying violation of his constitutional rights. Specifically, he argues that the Court's finding that Detective Lodato is entitled to qualified immunity is not necessarily a finding of probable cause to arrest such that Plaintiff has failed to state a claim. *See* Dkt. No. 123 at 3–5. Plaintiff further argues that the Court overlooked his May 25, 2014 arrest by Detective Kolenda. *Id.* at 5.

To begin, the Plaintiff correctly argues that while the City cannot be liable under *Monell* where Plaintiff is unable to show that the individual tortfeasor committed a federal law tort, "the entitlement of the individual municipal actors to qualified immunity . . . [is] irrelevant to the

liability of the municipality." *See Askins v. Doe*, 727 F.3d 248, 253–54 (2d Cir. 2013).  As a result, finding that Detective Lodato is entitled to qualified immunity does not equate to a finding that there was no underlying constitutional violation of Plaintiff's rights for which the City could be held liable.  Here, the Court admittedly declined to evaluate in its September 30, 2019 Opinion whether probable cause actually existed; it only concluded that Detective Lodato was entitled to qualified immunity because officers of reasonable competence could disagree whether there was probable cause.  Furthermore, with respect to municipal liability arising from Plaintiff's May 25, 2014 arrest by Detective Kolenda, Plaintiff is correct that he was under no obligation to name as parties the individual tortfeasors whose conduct led to a *Monell* claim against the City.  *See Askins*, 727 F.3d at 253 ("[T]he plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.").  The Court's September 30, 2019 opinion also did not expressly make any findings as to liability imputed to the City through the actions of Detective Kolenda.

Nonetheless, reconsideration or vacatur of the judgment is unwarranted because, even if true, these observations could not "reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.  Crucially, Plaintiff's *Monell* claim failed because Plaintiff did not allege facts sufficient to establish municipal liability.  To state a *Monell* claim for municipal liability under Section 1983, a plaintiff must plausibly allege "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth element requires that the plaintiff plausibly allege both the existence of a municipal policy and that the policy caused (*i.e.* was the "moving force" behind) plaintiff's injury. *Id.* at 37–38.  To establish the existence of a municipal policy, a

11

plaintiff may point to an official policy, practice, or custom that caused his injuries, or he may identify a practice so "persistent and widespread," or "permanent and well settled[,] as to constitute a custom or usage with the force of law" and to "imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't.*, 971 F.2d 864, 870–71 (2d Cir. 1992) (citation omitted). In addition, a municipality's failure to supervise, train, or discipline personnel can give rise to *Monell* liability if the need to act to prevent rights violations is so obvious that the failure to do so amounts to a policy of "deliberate indifference." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

Even crediting the Plaintiff's *pro se* status and reading his claims liberally, the Court was not presented with facts sufficient to substantiate a finding of municipal liability. To begin with, Plaintiff did not specify any *official* policy that caused his alleged constitutional violations. He cursorily points to NYPD Patrol Guide Section 208-36 ("Patrol Guide") in his Amended Complaint, but this is insufficient to establish an official policy here for at least two reasons. First, the Patrol Guide is not a mandatory arrest policy; instead, it requires that officers have probable cause prior to arresting an individual. As such, the official policy—to the extent one exists—cannot be read as having *caused* any deprivation of constitutional rights, insofar as the policy expressly requires probable cause prior to effectuating an arrest.

Nor does the Plaintiff fare better with any other theory of a municipal policy or practice. For one, he did not plead any facts to support the existence of a practice so "persistent or widespread" as to amount to "custom or usage with the force of law." *Sorlucco*, 971 F.2d at 870–71. Indeed, he did not point to a single comparable incident, let alone enough to substantiate a claim that such practices are persistent or widespread. Along similar lines, the Plaintiff alleged no facts to support a finding that his alleged injuries were the result of the City's

failure to supervise, train, or discipline personnel in a way that amounted to a policy of "deliberate indifference." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). Having failed to allege facts sufficient to establish the existence of "an official policy of the municipality caused the constitutional injury," *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), the Plaintiff's arguments regarding the Court's analysis of *Monell* liability in its prior opinion are unavailing, and any reconsideration of the issue would not "alter the conclusion reached by the Court." *Shrader v. CSX Tranp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Because the end result—dismissal of the Plaintiff's claims—would be the same, the Court denies the Plaintiff's motion for reconsideration on this issue, as well.

### C. Plaintiff's Motion to Vacate the Judgment and for Leave to Amend the Complaint is Denied.

As noted above, to receive leave to amend the complaint after judgment has been entered, the Plaintiff must first have the judgment vacated or set aside. Because the Court denies Plaintiff's motion to set aside or vacate the judgment, Plaintiff's motion for leave to file a Second Amended Complaint is DENIED as moot.

Even had the Court granted Plaintiff's motion for reconsideration, however, his motion for leave to amend the complaint would still fail because he has failed to establish excusable neglect under Rule 6(b)(1)(B). In evaluating the existence of excusable neglect, Second Circuit precedent requires that courts consider the following factors, with the third factor receiving the greatest attention: "[1] the danger or prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). Here, the Plaintiff made a

sworn statement asserting that he did not receive a copy of the Court's September 30, 2019 decision until after the deadline to file a second amended complaint because he was travelling out of state. *See* Dkt. No. 122 at 5. Plaintiff points to a plane ticket in his name that indicates he left New York City on October 29, 2019, prior to the deadline. *Id.* Ex. A. He also provides a plane ticket that indicates he had a flight from Tel Aviv, Israel set to arrive in New York City on October 1, 2019. *See* Dkt. No 135, Ex. A. Plaintiff also provides a sworn statement from a witness who asserts that she stayed at Plaintiff's house during the month of October and that Plaintiff was away from his home during the entire month. *See id.* Ex. C. Even assuming Plaintiff's representations were accurate and established that he was away for the entire month, the fact remains that the Plaintiff had previously consented to receive an electronic service and was therefore put on constructive notice that the Court had issued its opinion and order. *See* Dkt. No. 102. With this in mind, Plaintiff's arguments that he did not receive the email notices or that he does not have access to the Court's electronic filing system, *see* Dkt. No. 137 at 1, are unconvincing, and Plaintiff's argument that he should not be expected to check his email, *see id.* at 1–2, is plainly inadequate. Indeed, the Second Circuit has made clear that "parties have an obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal." *Stevens v. Miller*, 676 F.3d 62, 70 (2d Cir. 2012) (citation omitted). The same principle holds true for motions for reconsideration. While Plaintiff's wholly insufficient reasoning for failing to follow the Court's order itself weighs heavily against granting Plaintiff leave to amend, the Court also notes yet another factor: the length of the delay and its potential impact on judicial proceedings. Plaintiff filed his motion for permission to file a second amended complaint on December 3, 2019, more than two months after the deadline. *See* Dkt. No. 122. These circumstances, whether assessed individually or in conjunction with each other, all serve to

establish the lack of excusable neglect. Thus, even had the Court vacated or set aside its judgment, the Plaintiff's motion for leave to file a second amended complaint would have been denied. Though the Court does not accept Plaintiff's argument that he had good reason not to have received notice of the order until November 2, 2019, even if it did, it would find that the Plaintiff's delay of more than 30 days after November 2, 2019 to file his motion further cuts against his claim of excusable neglect. Thus, Plaintiff's motion for leave to amend the Complaint is denied.

## IV. Conclusion

For the above reasons, Plaintiff's motion for reconsideration is DENIED, and Plaintiff's motion for leave to amend the complaint is DENIED. This Order resolves Dkt. Nos. 122 and 123.

SO ORDERED.

Dated: October  1 , 2020
New York, New York

ALISON J. NATHAN
United States District Judge